Please, the court. We would like to make two clarifications that may explain something that appears in our briefs. First, we agree that if this were a review of a district court decision that actually had fashion and equitable remedy, and we were challenging that remedy, that the standard of review would be abuse of discretion. And that would be the normal course. But in our case, the posture at the district court was summary judgment based on stipulated facts. And there were no disagreed facts. And that was admitted by the defendants. Second, in light of how late we are in the election calendar, the proposal Mr. Starkey and I made at the district court may have some practical limitations. So the suggestion that we wanted to piggyback a special election with the November 2016 election may have lost its practical effect at this time. And we spent a lot of time talking about that in our briefs. Even if the court reviews this case under abuse of discretion, we believe that the district court did abuse its discretion. The first thing we want to point to is the district court did not impose any remedy, although all of the parties have agreed that there is a constitutional level violation. You seem to be arguing, in the briefs at any rate, that if the district court didn't like your request, it should have come up with another plan. Am I wrong? When we filed our amended complaint after the 2014 election had already occurred, we asked for a special election. In the pleadings, we did not specifically assert any particular kind of special election. By the time we were arguing on summary judgment, Mr. Starkey and I had made a proposal that we believed had all of the factors taken into account in their best constellation, minimizing costs, minimizing confusion to the voters, not dragging the voters to the polls on a separate date. And we believe that that was a good proposal, but we never foreclosed any other. You're referring to the proposal of a special election to be held with this November's general? That's correct. And now, just to clarify what your position is, you're not asking for that anymore? Well, we just see that there is a very limited practicality to it. Frankly, I would like to hear it. Because ballots cannot be printed into it? Well, the schedule that we're on right now, I went to the Marion County Clerk's office two days ago, and they told me that as of yesterday, there would be a finalization of the form of the ballot. And then from there, they would begin printing that. So you're not asking for that any longer? I don't want to rule it out, because I think the Marion County Election Board, they may prefer the inconvenience of tandeming it up with this November's election to the enormously greater cost of holding a special election in the future. So what exactly are you asking us to order? That we remand for a special election. When? And our preference that we talked about in our briefs was that we do the most convenient one, the least costly one, the least confusing one, would be with the November 2016 election. But at this late date, we understand how impractical that can be. And in any event, we believe that no remedy is an abuse of discretion. OK, maybe I could get at it this way. What do you want the mandate line of our opinion to say? What specifically are you asking us to order the state to do? I'm in a predicament just as difficult as the court might be. Pretend you're a judge. Right. I would want to hear from the Marion County Election Board what their preference was. If there's going to be a special election, which one would you want to do? And in that event, if the Marion County Election Board says it's less inconvenient for us to do it this year, Mr. Starkey and I would like it to be this year. If, on the other hand, they say that's just completely impractical, which is something they never addressed with the district court. They did not talk about how hard it was, how costly it was. Any of those things were never presented at the district court. OK, so you want us to order a special election to be held at the discretion of the local elections authorities. Is that a fair summary of what you're now asking us to do? I appreciate the difficulty of this. I would suggest that. You're asking for a judicial job. You've got to make a decision. You better become a little, you know. My prediction, then, at this late date, with people being handed written paper ballots that they could exercise their voting choice bond for 2016, that begins in the absentee ballot process on September 24, just a few days away. We should be considering a remand to the district court to fashion an appropriate special election that occurs after this year's November 2016 general election. We're not going to get the answer. But you seem to argue that if the district court didn't like your request, it should have come up with another plan. And I'm wondering, under what authority are you entitled to relief that you didn't request? We requested a special election when we filed the amended pleading. And we argued at the district court when the summary judgments were litigated, we argued that a special election is appropriate. We made a proposal of one kind. We did not ask for an exclusive remedy of that remedy only. And I believe we have broadly stated our request. We think a special election is appropriate. We recognize it. How would ballot access be achieved for this special election? From whom? From the voters? All of you candidates. OK. That's part of the thing. Those who actually won the election that you challenged, and then others. That was part of the thing that was not fleshed out by the defendants or the district court. We proposed that only the general election portion of the election be held again. And that would be with any of the primary election candidates who were in the top 16 vote getters in the already held primary election that nobody is challenging was illegal. So the top 16 vote getters that includes, as I understand it, is it 11 Democrats? It would be 11 Democrats and 8 Republicans. And then the general election voters would choose 16 from those 19 candidates. You know, in asking for a special election, you rely on cases that emphasize that no further election shall be held under the invalid statute. But there's already a permanent injunction that will prevent the statute from applying to further elections. And you know, we have characterized special elections as extreme remedy, as drastic, and even we've used the word staggering. What cases support getting over that hurdle for you? You have such a hurdle. We had, I believe, the Rounds case was one. There was another, I don't recall the name of the case that we cited in our briefs, but the quote was something like, if there's a violation of the Constitution, the voters should not be required to wait four more years until it's remedied. In our case, the judges in Marion County are elected for six-year terms. At this date, there are more than 4 and 1 quarter years left in that term. And all of those cases you're talking about, Your Honor, especially the Gersten case, it talks about how making the decision of whether to hold a special election is done according to equitable principles. Those equitable principles include a number of factors that we talk about in our briefs. And frankly, the defendants did not talk about many of them. Those include the idea that if there's a constitutional level, the court shall look at the magnitude of the constitutional violation. Here, we have the common cause decision that this court entered that the defendants and the district court all agree with that say the voters in Indianapolis, in Marion County, were denied a meaningful vote. And they determined that voting is one of the most important rights we have under the Constitution. Well, that's always going to be the case in this context. You're just stating the obvious. You're not giving us a reason why this case justifies a special election. It may help to compare our situation to the Gersten situation. In Gersten, there was an election of political party officers, ward chairs and ward precinct committee persons. And they compared the two. And one had a ballot access requirement of having a petition of 5% of the voters in that district. And the other had a ballot access requirement of 10%. And the court held that that was an impermissible restriction on your voting rights. But that's different from what we have. In that case, they were electing political party officers at the township and the ward level. So they would only affect small districts. In our case, we are electing judicial officers for the largest county in Indiana. And they hold six-year terms. They exercise the power of the state. The voters are hopefully making a meaningful decision on who's going to exercise the judicial power of the state. That's much different than what was in Gersten. And an important thing to remember from Gersten, Gersten made all those statements that Your Honor had talked about, how we should be loathe to interfere with the election process unless there's a good reason. Yet, this court remanded it back saying, please reconsider. It didn't say a special election was inappropriate. It said, you must take into account all these equitable factors before you make a decision about it. And so they remanded. And we have those equitable factors that make sense in our case to order a special election. We have the number of voters that are affected. There were 156,000 voters who showed up on November of 2014. And all of them were denied a meaningful vote on who their judges would be. There are more than 646,000 registered voters in Marion County. Many of those may have stayed home because they recognized how futile the process of going to the polls would have been that year. And so if we had a meaningful election, it affects more than the 156,000 voters we were talking about. What else was on the ballot that year? That was, there was, I don't believe there was a United States Senate candidate, but there certainly was a United States Congress candidate every two years. There were county election officers. No gubernatorial race? The gubernatorial race in Indiana goes along with the presidential year, so that was not there as well. I want to quickly ask you, because on pages 29 and 30 of the state's brief, the state explains how the Indiana statute provides how candidates are selected for a special election. And why should the court eschew that statutory process in favor of the one you suggest? I mean, yours seems specifically designed to keep you in the running. Right. Your Honor, I see my time's half up. No, no, no, please, try to respond. We did not foreclose that. Certainly, there are any number of ways that the district court could fashion a special election remedy, and we are not adverse to any of those. We just think it should be fleshed out based on the facts and taken into account. And the district court should do it. Yes, and taken into account. It should do it. What kind of testimony should the district court take? Well, the answer to that focuses more on the absence of what was there. The defendants suggested that there would be a high cost of the election. They didn't present any evidence. And in fact, I had an affidavit that suggested there are certain factors on the cost. They talked about the cost to candidates, and they didn't present any evidence on that. And there is a different context based on trying to tandem up with the 2016 election, as opposed to next year, those things would be different. I just want to ask you about Gerson. I'm not suggesting that the plaintiff's efforts here are egregiously late. I don't want my question to be against that backdrop. But would you say that Mr. Starkey, after the unsuccessful intervention, waiting two months to file the suit against the backdrop of the temporal aspects of this, and he knew the general election was coming, right? Yes. He and I both did. For a district judge to look at that and conclude, you're saying it was abuse of discretion in concluding that he did not move with alacrity? Yes, Your Honor. When we filed, it was 85 days before the election. And the deadline for certifying the nominees from the primary had not even occurred yet. I wanted to point out also that under the filling of vacancies, so suppose a candidate died or moved out of the district, those vacancies could be filled as late as five days before the election. And in addition, we were able to litigate the entire preliminary injunction process before the election had happened within those 85 days. But you did wait, did you not, until you saw how the primary would turn out? We did not file any earlier than August 11th. That's correct. Thank you, Your Honor. I'll allow some rebuttal time. Thank you very much. All right. We'll now hear from Mr. Garn. Good morning, and may it please the court, I'm Jefferson Garn from the Indiana Attorney General's in the case below and here. You know what? I need to know this from you, from what you think. Did the prior decision invalidate anything other than subsection 13b of the election code? That was the focus in common cause, yes. It was subsection b. So why does the state need to come up with an entirely new system? Couldn't it simply excise the offending subsection, proceed with the remainder of the statute? And I'm not referring simply to a special election, but to any regular election going forward. Subsection b is very comprehensive. It involves both the primary and the general election. And it says how the entirety of the election is to take place. The appellants have suggested that it only deals with the general election. And that's just not the language of the subsection b at all. In fact, in common cause, this court pointed out that the primary isn't simply a warm up to the general election. That it's meaningful that the whole thing has to be taken into account. In addition, subsection b, it defines the way the candidates were selected. It shapes how the parties act going as the slating. The Republican Party only had eight candidates slated for the primary. The Democrats slated eight, and then there were three others. Yeah, 11. So that is the comprehensive. This morning, there are three things in response I'd like to touch on. Standard of review, the appellant-specific election system proposal, although that seems to have changed a little bit, and the timeliness of the request by the appellants and why that matters. Here they are asking, on the standard of review, they're asking for staggering and unprecedented relief. There are several layers, several problems facing the appellants here. Just out of curiosity, when is the next judicial election that would require the implementation of this decision? 2018. 20 judicial candidates would be up for election if we were to follow the same six-year, and there's a two-year, and the other batch comes up. So it would be 20 in 2018, and then 16 in 2020. OK, and what is the status of the state's efforts to implement the requirements of the Common Cause decision? This past session, there was a proposal that made it quite a ways along, but it wasn't resolved completely. In some of the articles that were cited by Judge Young, the district court judge, the Speaker of the House said there were some details that needed to be worked out. The specific proposal that didn't get passed, that's under consideration, that it was similar to the appellate selection for Indiana courts where there's a judicial nominating commission. But the bottom line is that no legislation has yet been adopted to repair the constitutional defect? No, and the entire time, it was thought that they had two years before they had to do that. Right, that's why I asked the date. Right, and it was clear that they thought about this, such a big undertaking for Marion County in particular. Marion County is the only county in the state that has this, right? I believe it's the only system in the country that has a system like that. But there's no challenge to that system now. Common Cause is the law, and everyone knows that it needs to be changed, and it will be. This is one of the options currently before the state legislature, just to elect judges in the normal way that the rest of the state does, and that other states do. I don't believe that that is, I think that that has been tossed around with the General Assembly. But one thing that's clear is there's a preference in Indiana for some of the bigger counties for their judicial systems to be not just the typical way where you'd have some of the smaller counties where there's one superior court, and there's one circuit court, or there's just one court. There's a qualitative difference in a big court system, especially with Marion County, Indianapolis being the capital, the agencies. There's a statewide impact that the General Assembly needs to take into account. The plaintiffs have faced several burdens here, several hurdles. First of all, they're asking for equitable relief. That, in itself, is extraordinary relief. Underlying the decision, Judge Young's decision, was the doctrine of latches, which is itself reviewed for abuse of discretion. Here they're asking for an election remedy, a special election. Judge Rovner, as you mentioned, that's been described as an intrusion on the political process. Staggering relief, that's also for abuse of discretion, where the district court is given broad leeway. And the specific request they're asking here is without precedent. They're asking this court, and by extension, the district court, to create a system where there isn't a system in place right now. There is a default that's not used by the bigger counties. So they're asking this court, or the district court, to impose an electoral system for judges when courts have granted broad leeway to address how judges get elected. So to say that this is extraordinary relief really understates the parameters of what the appellants here are asking for. Well, no matter what they'd ask for, it would be extraordinary. You're the only county in the world. That's correct. Just specific to what the district court ordered, the appellants this morning and in their briefing have said that the district court provided no relief. That's not correct, because this case cannot be seen as separate from common cause. There was relief. The relief was prospective relief, where the court said, you cannot use this system again. And we're not challenging that. That's a relief. And prospective relief, for cases like this, looking at the cases, that appears to be the default. And Jurisdiction makes that very clear that the default is to let the legislature deal with this problem and address it first. There are a number of problems with this specific relief requested, whether that involves a special election in a mere couple weeks, or whether some other plan that remains to be determined. The first problem that I've touched on a little bit already is that this is a job for the legislature. The legislature, the appellants cited Reynolds versus Sims. In that case, the court specifically commended the district court for not jumping in and imposing the system right from the beginning, not staying any relief, waiting until the legislature had a chance to address this. And that was a case in the deep south in Alabama in the 60s. And even then, the court said, that was good to let the legislature deal with this first. Look for its own solution. What was the time to the next election in that case? I don't know that off the top of my head. Was it as long as? Well, we're not at six years now. We're at four years, right? Well, that case would have been, we're at four years. Yes, we're at four years. Right, these plaintiffs have to wait four years to have an opportunity to run under a constitutional system, whatever that happens to be in terms of what the legislature comes up with. Actually, they have two years, because that's when the next election would come up. Oh, I thought you said it was 2020. 2020 would be when the 2014 batch would be up again. There's the 20. Oh, there is an election for judges in Marion County Superior Court in 2018? That's correct, yes. So there are two batches, and they get staggered. And that's another consideration for this court has recognized there's the Lynch case, where the timing of the election matters. And courts have granted discretion for that. And in that case, in Lynch, the court said that having the election either on an off year, on a presidential year or an off year, that's an important consideration. Here, the batches of the candidates would rotate. So one year, they'd be up against, they'd have to pay for a campaign with the presidential election going on. The next year, the next time they came up, they wouldn't have to face that. And how many seats are open in 2018? 20. OK. And then there would be 16 in 2020. And right now, those 20 are balanced 10 and 10 in terms of partisan affiliation? That's correct. You know, the state argued that the plaintiffs claimed that they would have won the election are speculative. But wouldn't that be the case in virtually every request for a special election? How does anyone ever prove they would have won an election if they'd only been allowed to run? Well, I think you have the had not case, where the party there was able to prove by straight tickets. The straight party tickets would have been enough to elect those candidates. You're correct, though. With the special election, and that was a problem facing the court and, I think, facing the defendants, too, is all of this is speculative. So to try to figure out exactly how much this would cost, I mean, even at this late date, it's still unclear what the appellants really want the district court or this court to do in terms of relief. When they filed the lawsuit, when they filed the complaint in August of 2014, the only thing they were asking was that Mr. Starkey and Mr. Bowes be placed on the general election ballot. They didn't mention the ninth place candidate, David Hennessey, who beat them in the election. They've since changed that. They amended it as they were moving along with the request for a preliminary injunction. But it's been a bit of a moving target to figure out exactly what's being asked for. And the burden is being pushed on the district court and the defendants to come up to figure out what exactly the plaintiffs want here and how much it would cost and that. Another problem, and the appellants recognize this, we're 61 days away from the general election. We're 16 days away from when the counties would have to send out the absentee ballots, in addition to just doing the ballot. It's a special election, so Indiana law requires that notice goes out to the state agencies, like the Bureau of Motor Vehicles, those serving the disabled. The final problem here, the big problem is the appellant's proposed solution does not address the problem in common cause. The problem in common cause that this court recognized with the Marion County Partisan Balance System was that it didn't open up a marketplace for the candidates. The appellant's solution doesn't cure that problem. It, at most, adds three candidates. And that's not opening it up. All right. Thank you, Mr. Garan. Thank you. I suppose your time had expired, but you may have an additional two minutes. Your Honor asked about Mr. Starkey's efforts to intervene in the common cause case. The dispatch that Lynch addressed. And how that related to the date that we actually filed the case in our case. He had asked the district court to review the magistrate's decision denying his intervention. That case was, that appeal step was still pending until long after we filed in our case. And so he is still working on that at the time, hoping for a good result. So there was a report and recommendation from the magistrate to the district judge. And was there any action taken then to ask the district judge, in light of the nature of the litigation, to expedite? I know that once we filed our lawsuit, we were taking every step we could possibly take to speed things up. We asked for a summary ruling. We asked for early trial. Even at the appellate stage, we were asking this court to put us on an expedited calendar. But you're not anymore? No, actually, I want to address that, because Mr. Starkey wanted to meet it. Your question to us was, what specific remedy do we want? I'm concerned about the practicality of doing it this fall. Mr. Starkey wants the court to know that he prefers that we still piggyback our request on the November 2016 date. There are so many things that the government has talked about here that I'm not sure we can address them all in two minutes. But one thing I wanted to address your situation with the Reynolds case. He's correct that they did credit the district court for being careful about ordering a special election. But that was only the first step in the process. That district court then turned around and ordered special election at the next step when remedy hadn't been worked. And I think the turnaround time that you were asking about, it was probably on a two-year cycle in that case. There's so much there. Mr. Hennessey, we did include Mr. Hennessey was the third candidate who did not survive the Democratic primary. We've included him ever since we've asked for a special election after the November 2014 election had already happened. The government suggests that the subsection B relates to the primary. It does not. It is a restriction on how many nominees can be put on the general election ballot. Subsections A, C, and D all by themselves tell us how we could run this election in a constitutional way. And there's so many other parts to the Indiana law. We asked the court to remand for a special election. Let me just, if I could ask you a final question, I suppose. Aside from all the equitable factors we have to consider in dealing with this special election, should we take into account at all, and I want to be fair here so I give you an opportunity, what I would call the relatively modest efforts that you and Mr. Starkey made with regard to candidacy? Because you make the argument you might have been elected. Is it fair, and I don't know the efforts made by everyone else, but is it fair to say that your efforts and Mr. Starkey's with regard to campaigning were relatively modest? What is true is neither of us spent any money. Mr. Starkey, in the facts, has said he made no efforts. I, on the other hand, made efforts in addition, but did not spend any money. Part of that was related to my efforts to get voter information data from the Voter Registration Office that included a two-year litigation that didn't even end until 2015. And I was hoping each day that that case would be resolved, and I could use that information to help me campaign effectively without spending money. And I think the court's question also pointed out the other thing. Due to the Marion County situation, where they knew that if they won the primary, they were, in effect, winning the general election, I don't believe any of the candidates who are now sitting as judges spent that much or made that much effort either. So thank you. All right, the case is taken under advisement.